UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

VINCENT JOE CARTER,

                    Plaintiff,                          Case No. 2:21-cv-203

v.                                                      Honorable Maarten Vermaat

CHRISTOPHER LUTJENS et al.,

                    Defendants.

_____/

## <u>OPINION</u>

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff previously sought and was granted leave to proceed *in forma pauperis*. (ECF No. 6.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 5.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v.*

*Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to the action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Scott, Carlson, Smoyer, Unknown Parties, and Washington. The Court will also dismiss, for failure to state a claim, the following claims against the remaining Defendants: (1) Plaintiff's claim pursuant to 42 U.S.C. § 1985; (2) Plaintiff's claim pursuant to 42 U.S.C. § 1986; (3) Plaintiff's First Amendment and RLUIPA claims against Defendants Lutjens, Feliciano, Wellman, Tasson, Dahl, McCarthy, and Huss; (4) Plaintiff's Eighth Amendment claims against Defendants Lutjens, Feliciano, Tasson, Dahl, McCarthy, and Huss; and (5) Plaintiff's First Amendment retaliation claim against Defendant Heinritz.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 2022 WL 322883, at *4–6, *4 n.26 (3d Cir. Feb. 10, 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

The following claims remain in the case: (1) Plaintiff's First Amendment free exercise claims against Defendant Heinritz in her personal and official capacities; (2) Plaintiff's RLUIPA claims for declaratory and injunctive relief against Defendant Heinritz in her official capacity; (3) Plaintiff's Eighth Amendment claims against Defendants Wellman and Heinritz; and (4) Plaintiff's First Amendment retaliation claims against Defendants Lutjens, Feliciano, Tasson, Dahl, McCarthy, and Huss.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan. The events about which he complains, however, occurred at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. Plaintiff sues MDOC Director Heidi Washington, Correctional Facilities Administration Transfer Coordinator Laura Heinritz, MDOC Bureau of Health Care Services Nurse S. Smoyer, and the following individuals at MBP: Warden Erica Huss, Assistant Deputy Wardens Unknown Tasson and Unknown Dahl, Business Manager Unknown McCarthy, Food Service Director Christopher Lutjens, Assistant Food Service Director J. Feliciano, Registered Dietician Kelly Wellman, Health Unit Manager C. Scott, Registered Nurse Unknown Carlson, and Unknown Parties.

Plaintiff alleges that he was transferred to MBP for outpatient treatment on July 1, 2020. (ECF No. 1, PageID.7.) At the time, Plaintiff was on the "Buddhist Religious 'Strict Vegan Diet' meal program." (*Id.*) Plaintiff maintains that MBP did not provide or was not equipped to provide religious "strict vegan diet" meals. (*Id.*) Plaintiff does not explain how the food provided by MBP failed to comply with his religious strict vegan diet.

4

Plaintiff alleges that from July 1, 2020, until July 10, 2020, he was forced to choose between an inadequate diet and adherence to his religion because: (1) MBP did not provide "strict vegan diet" meals and (2) the food was served in inadequate portions. (*Id.*) During that time, Plaintiff ate a piece of fruit and juice each day for more than a week, causing him to suffer "severe hunger pains all day and all night." (*Id.*) Moreover, his inability to eat affected his mental illness and antidepressant medication. (*Id.*) Plaintiff began hallucinating and was placed on 72-hour observation/suicide watch from July 4, 2020, through July 8, 2020. (*Id.*)

Plaintiff contends that his meals "must be prepared a certain way to prevent cross contamination with other foods that are considered 'haram' (harmful)." (*Id.*) He contends that Defendants Huss, Dahl, Wellman, Lutjens, Feliciano, and McCarthy "refused to provide Plaintiff with his religious diet or provide him with a special diet consistent with his religious beliefs, enough to sustain normal health." (*Id.*) On July 8, 2020, Plaintiff filed a grievance against Defendants Wellman and Tasson, as well as Olsen, Sergeant Methorny, PC Johnson, and Psychiatrist Mende Green (not parties), for deliberate indifference to his medical and psychiatric needs and for violating his "rights to practice his sincerely held religious beliefs." (*Id.*) On July 18, 2020, Plaintiff filed another grievance against Defendants Wellman, Lutjens, and Feliciano "for conspiring to alter and falsify documents, in particular [his] religious vegan meal tickets." (*Id.*) According to Plaintiff, he was receiving foods that were not on the Buddhist "strict vegan diet" and, therefore, were haram. (*Id.*) From July 10, 2020, through July 24, 2020, Defendant Wellman provided Plaintiff vegan meals from the general population chow line "in order to try and accommodate Plaintiff's strict religious vegan meals." (*Id.*, PageID.8.)

On July 24, 2020, Plaintiff was transferred to the Chippewa Correctional Facility in Kincheloe, Chippewa County, Michigan, "so that his religious diet could be accommodated." (*Id.*)

5

He alleges, however, that on September 14, 2020, Defendant Heinritz or her successor approved Plaintiff's transfer back to MBP despite MBP's inability to accommodate his religious diet. (*Id.*) After he was sent back to MBP, he "notified all named Defendants and Defendant Wellman told Plaintiff that she ha[d] no authority to modify or change his religious diet." (*Id.*) Plaintiff spoke directly to Defendants Lutjens, Feliciano, McCarthy, Huss, Tasson, and Dahl about the issue while his numerous grievances were pending. (*Id.*) Those Defendants acknowledged when responding to his grievances that MBP does not provide religious diets. (*Id.*) They also told Plaintiff that "they would not intervene or order a religious vegan diet tray for him," and that they would help him get his religious meals only if he withdrew his pending grievances against them. (*Id.*, PageID.9.) When Plaintiff refused to withdraw his grievances, "he was told on multiple occasions that they would make sure he [would] not receive any special accommodations or any special treatment to accommodate his religious meals." (*Id.*) Plaintiff claims that Defendants Lutjens, Feliciano, and McCarthy told him he should "do them and the State a favor and kill himself and save them all money, because if it was up to them they would allow Plaintiff to starve." (*Id.*)

Plaintiff also spoke to the Security Classification Committee (SCC), consisting of Defendants Huss, Dahl, and Tasson, when they made rounds in Q-Block. (*Id.*) These Defendants told Plaintiff "that the only way [he] was going to eat [was] to break his religious tenets and eat off the regular meal lines, just ask for the sub because they would not be providing him with a religious 'strict vegan' diet to change his religious beliefs, because he would be a resident of MBP for a while." (*Id.*) These Defendants also told Plaintiff "to keep filing letters and complaints to their bosses and see if anything changes" because he would "be transferred by the time anything is investigated or done about his religious diet." (*Id.*) Plaintiff contends that not receiving his religious diet again caused him to experience severe hunger pains and also "caus[ed] his mental

6

capacity and stability to deteriorate further, and caused side effect from taking his anti-depression medication from not eating." (*Id.*)

Plaintiff filed another grievance on September 17, 2020. (*Id.*) He contends that he was forced to eat only fruit and juice, as well as what he was able to get from other inmates and "extra peanut butter cups from other inmate lunch bags" from September 14, 2020, until November of 2020. (*Id.*) He contends that without his religious diet, he was unable to eat, exercise, adequately pray, and adequately practice and study his religious faith. (*Id.*) Plaintiff avers that he also suffered a "severe emotional, mental, physical[,] and psychological breakdown." (*Id.*)

Based on the foregoing, Plaintiff asserts violations of his First and Eighth Amendment rights, as well as his rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. §§ 2000cc, *et seq.* Plaintiff also asserts violations of 42 U.S.C. §§ 1985 and 1986. He seeks declaratory and injunctive relief, as well as compensatory and punitive damages. (*Id.*, PageID.13.)

## II.      Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at

7

679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

**A.      Claims Pursuant to 42 U.S.C. § 1985**

Plaintiff avers that Defendants conspired to violate his rights pursuant to 42 U.S.C. § 1985. (ECF No. 1, PageID.12–13.) To maintain a cause of action for conspiracy under 42 U.S.C. § 1985(3),[2] a plaintiff must establish the following four elements: (1) a conspiracy involving two or more persons (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws and (3) an act in furtherance of the conspiracy (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States. *See Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996) (citing *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994)); *Smith v. Thornburg*, 136 F.3d 1070, 1078 (6th Cir. 1998). Moreover, the plaintiff must allege that there existed "some racial, or perhaps otherwise

---

[2] Subsections (1) and (2) of § 1985 do not apply. Subsection (1) is inapplicable because Plaintiff does not allege a conspiracy to interfere with federal officers in the performance of their duties. *See* 42 U.S.C. § 1985(1). The first clause of subsection (2) is also inapplicable because Plaintiff does not allege that Defendants conspired to influence parties, witnesses, or jurors in federal court proceedings. *See* 42 U.S.C. § 1985(2). In addition, the second clause of subsection (2) is inapplicable because Plaintiff does not allege that Defendants conspired to "interfere with due process in state courts with the intent to deprive persons of their equal protection rights." *Fox v. Mich. State Police Dep't*, 173 F. App'x 372, 376 (6th Cir. 2006).

class-based, invidiously discriminatory animus behind the conspirators' action." *See Kush v. Rutledge*, 460 U.S. 719, 726 (1983); *see also Collyer*, 98 F.3d at 233.

Here, Plaintiff suggests that the alleged conspiracy was motivated by his religious beliefs. Nevertheless, while Plaintiff alleges that Defendants worked together, his complaint is devoid of facts suggesting that they overtly agreed to violate his equal protection rights. *See Siefert v. Hamilton Cnty.*, 951 F.3d 753, 768 (6th Cir. 2020) (noting that a plaintiff must set forth facts alleging that defendants agreed to violate the plaintiff's rights and committed an overt act in furtherance of that agreement). Plaintiff's conclusory allegations are insufficient to maintain his conspiracy claim against Defendants. *See Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987) (noting that "conspiracy claims must be pled with some degree of specificity" and that "vague and conclusory allegations unsupported by material facts will not be sufficient to state a claim").

Plaintiff's conspiracy claim is also barred by the intracorporate conspiracy doctrine. This doctrine states that "if all of the defendants are members of the same collective entity, there are not two separate 'people' to form a conspiracy." *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Ed.*, 926 F.2d 505, 510 (6th Cir. 1991). The Sixth Circuit repeatedly has applied the doctrine to claims under § 1985(3). *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839–40 (6th Cir. 1994) (quoting *Hull*, 928 F.2d at 510).[3] Recently, in *Jackson v. City of Cleveland*, 925 F.3d 793, 817-19 (6th Cir. 2019), the Sixth Circuit concluded that the intracorporate conspiracy doctrine applies to § 1983, as well as § 1985, recognizing that in both contexts, unless members of the same collective entity (such as the MDOC) are acting outside the scope of their employment,

---

[3] The Supreme Court has neither adopted nor rejected application of the intracorporate conspiracy doctrine to claims under 42 U.S.C. § 1985. *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867–69 (2017) (citing *Great Am. Fed. Savings & Loan Ass'n v. Novotny*, 442 U.S. 366, 372 n.11 (1979)).

they are deemed to be one collective entity and not capable of conspiring. *Jackson*, 925 F.3d at 819; *see also Novak v. City of Parma*, 932 F.3d 421, 436-37 (6th Cir. 2019) (same).

Here, Defendants are members of the same collective entity—the MDOC. Plaintiff does not allege, much less show, that Defendants were acting outside the scope of their employments. The "scope of employment" limitation "recognizes a distinction between collaborative acts done in pursuit of an employer's business and private acts done by persons who happen to work at the same place." *Johnson*, 40 F.3d at 840. "The mere 'fact that two or more agents participated in the decision or in the act itself will normally not' suffice to create a conspiracy." *Id.* (quoting *Dombrowski v. Dowling*, 459 F.2d 190, 196 (7th Cir. 1972)). In addition, "simply joining corporate officers as defendants in their individual capacities is not enough to make them persons separate from the corporation in legal contemplation." *Harris v. Bd. of Educ.*, 798 F. Supp. 1331, 1346 (S.D. Ohio 1992). Instead, a plaintiff must allege that the defendants "acted other than in the normal course of their corporate duties." *Id.* Plaintiff has not done so here. Accordingly, Plaintiff has failed to state a claim for violations of 42 U.S.C. § 1985(3).

### B.  Claims Pursuant to 42 U.S.C. § 1986

Plaintiff also suggests that Defendants violated 42 U.S.C. § 1986, which states:

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses to do so, if such wrongful act be committed, shall be liable to the party injured . . . for all damages caused by such wrongful act, which such person with reasonable diligence could have prevented . . . .

42 U.S.C. § 1986.

Causes of action under § 1986, by its terms, are premised on the violation of § 1985. As discussed *supra*, Plaintiff fails to state a claim under § 1985. Accordingly, his claim under § 1986 fails as well. *Bartell v. Lohiser*, 215 F.3d 550, 560 (6th Cir. 2000) (explaining that

§ 1986 is derivative and conditioned on establishing a § 1985 violation); *Browder v. Tipton*, 630 F.2d 1149, 1154 (6th Cir. 1980) (same).

### C.      Claims Pursuant to 42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### 1.      Claims Against Defendants Scott, Carlson, Smoyer, and Unknown Parties

Plaintiff names Scott, Carlson, Smoyer, and Unknown Parties as Defendants but fails to include any factual allegations regarding them in the body of his complaint. The exhibits attached to his complaint, however, indicate that Defendants Carlson and Smoyer reviewed and rejected Plaintiff's grievances. (ECF No. 1-4, PageID.34-35, 39.)

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any

degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries"). Because Plaintiff's claims fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"), his complaint must be dismissed against Defendants Scott and Unknown Parties.

As noted above, Plaintiff's exhibits indicate that Defendants Carlson and Smoyer reviewed and rejected his grievances. Government officials, however, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs*., 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the

Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff fails to allege that Defendants Carlson and Smoyer engaged in any active unconstitutional behavior and, therefore, fails to state a claim against them.

### 2. First Amendment Free Exercise and RLUIPA Claims

Plaintiff contends that Defendants violated his rights under the First Amendment and RLUIPA by not providing his Buddhist "strict vegan" diet during his incarceration at MBP. (ECF No. 1, PageID.11.) The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I. The right to freely exercise one's religion falls within the fundamental concept of liberty under the Fourteenth Amendment. *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). Thus, state legislatures and those acting on behalf of a state are "as incompetent as Congress" to interfere with the right. *Id.*

While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). To establish that this right has been violated, Plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) his belief is sincerely held; and (3) Defendants' behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224–25 (6th Cir. 1987); *see also Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001); *Bakr v. Johnson*, No. 95-2348, 1997 WL 428903, at *2 (6th Cir. July 30, 1997).

Plaintiff has sufficiently alleged his sincerely held religious belief that a "strict vegan" diet is part of his religious practice. The next consideration is "whether the challenged practice of the prison officials infringes upon the religious belief . . . ." *Kent*, 821 F.2d at 1224–25. A practice will not be considered to infringe on a prisoner's free exercise of religion unless it "place[s] a substantial burden on the observation of a central religious belief or practice . . . ." *Hernandez v.*

13

*C.I.R.*, 490 U.S. 680, 699 (1989); *see also Welch*, 627 F. App'x at 485 (McKeague, J., dissenting) ("To violate the First Amendment, the diet must impose a substantial burden on the inmate's exercise of religion."). "[T]he Supreme Court has made clear that the 'substantial burden' hurdle is high." *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 734 (6th Cir. 2007). "[A] 'substantial burden' is a difficult threshold to cross." *Id.* at 736. Such a burden "must place more than an inconvenience on religious exercise." *Id.* at 739 (quoting *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 20014)). A particular government action will not be considered a substantial burden merely because it "may make [the] religious exercise more expensive or difficult." *Id.*

The Court's analysis of Plaintiff's RLUIPA claim parallels the analysis of his First Amendment free exercise claim. In relevant part, RLUIPA prohibits any government from imposing a "substantial burden on the religious exercise" of a prisoner, unless such burden constitutes the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. § 2000cc-1(a). The term "religious exercise" includes "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." *Id.*, § 2000cc-5(7).

The phrase "substantial burden" is not defined in RLUIPA. The Sixth Circuit has relied upon the Act's legislative history to conclude that the term has the same meaning under RLUIPA as provided by the Supreme Court in its decisions regarding First Amendment free exercise claims. *See Living Water*, 258 F. App'x at 733–34. Thus, a burden is substantial where it forces an individual to choose between the tenets of his religion and foregoing governmental benefits or places "substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Id.* (citations omitted); *Cutter v. Wilkinson*, 544 U.S. 709, 720 (2005) (recognizing that RLUIPA's institutionalized persons provision was intended to alleviate only "exceptional" burdens on

14

religious exercise). A burden is less than "substantial" where it imposes merely an "inconvenience on religious exercise," *see, e.g.*, *Konikov v. Orange Cnty., Fla.*, 410 F.3d 1317, 1323 (11th Cir. 2005), or does not "pressure the individual to violate his or her religious beliefs." *Living Water*, 258 F. App'x at 734. Such conclusions recognize that RLUIPA was not intended to create a cause of action in response to every decision which serves to inhibit or constrain religious exercise, as such would render meaningless the word "substantial." *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003).

Here, accepting as true Plaintiff's allegations that consuming anything other than a "strict vegan" diet violates the tenets of his faith, he was required to either abandon his religious diet practices or have less than adequate nutrition while incarcerated at MBP. Requiring Plaintiff to make such a choice is precisely the type of pressure that substantially burdens the free exercise of Plaintiff's religious practice. Plaintiff, therefore, has stated claims for violation of his First Amendment free exercise and RLUIPA rights.

Plaintiff attributes the constitutional violations he has suffered with respect to the failure to accommodate his religious strict vegan diet to remaining Defendants Lutjens, Feliciano, Wellman, Tasson, Dahl, McCarthy, Heinritz, Huss, and Washington. However, Plaintiff's factual allegations clarify that not every one of those Defendants played an active role in the alleged violation of his religious rights. Moreover, differences between the remedies available under § 1983 and RLUIPA impact whether Plaintiff may pursue relief against the potentially liable Defendants in their personal capacities, their official capacities, or both.

### a.    Free Exercise Defendants

"[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. The Court, therefore, must consider who is responsible for creating and changing religious diets.

General requirements for MDOC's food service are set forth in MDOC Policy Directive 04.07.100 (eff. Oct. 1, 2019).[4] Such requirements include three meals a day, with hot food provided for two of those meals. *Id.*, ¶ G. All menus and meals must satisfy the nutritional and caloric recommendations set forth in the dietary reference intakes approved by the National Research Council, and menu planning must follow "The Dietary Guidelines for Americans." *Id.*, ¶ H. The Food Services Program Manager is responsible for issuing standardized regular diet menus to be used at all MDOC facilities. *Id.*, ¶ J. Food service policy identifies two other types of diets other than the regular diet: therapeutic diets, as described in MDOC Policy Directive 04.07.101 (eff. Sept. 1, 2018), and religious diets, as set forth in MDOC Policy Directive 05.03.150 (eff. Jan. 3, 2022).

The religious diet menu consists of a vegan menu. The policy provides: "An alternative menu will be developed and provided only with approval of the Deputy Director and only if it is determined that the Vegan menu does not meet the religious dietary need of the prisoner." *Id.*, ¶ OO. The religious diet policy does not provide for changes to the religious diet menu other than changes necessary because the vegan menu does not meet the *religious* requirements of the prisoner. The policy indicates, however, that the vegan religious diet is not offered at MBP. *Id.* It provides that "[t]he Deputy Director or designee shall determine at which facilities religious meals will be offered." *Id.*

The only other possible alternative diet referenced is the therapeutic diet. Regarding such diets, the policy directive provides:

> The Administrator of the Bureau of Health Care Services (BHCS) or designee shall maintain a Diet Manual identifying criteria for prescribing and providing therapeutic diets, specific to the MDOC needs. The MDOC diet manual is

---

[4] Plaintiff references certain MDOC policy directives and the policies regarding religious and therapeutic diets in his complaint.

researched and written by the BHCS Registered Dietitians. This manual provides a guideline for circumstances under which therapeutic diets are to be ordered and medical nutritional services are to be provided.

To comply with existing standards of health care, all therapeutic diets shall be ordered by the MP or dentist based on guidelines set forth in the MDOC Diet Manual. The menus for therapeutic diets will be written by BHCS Registered Dietitians in accordance with the MDOC Diet Manual. Therapeutic diet orders will be reviewed by BHCS Registered Dietitians to ensure appropriateness and make recommendations based on the guidelines of the MDOC Diet Manual. All therapeutic diets will be served as prescribed in the Prisoner Health Record (PHR) by the MP or dentist and in accordance with the MDOC Diet Manual and PD 04.07.100 "Offender Meals and Food Quality Assurance."

\* \* \*

Menu options such as vegetarian, pork-free or other dietary variances that are requested for religious or personal (non-medical) reasons are not therapeutic diets and should not be ordered as such.

MDOC Policy Directive 04.07.101, ¶¶ G, H, M. (eff. Sept. 1, 2018). The policy directive makes clear that the preparation and service of the food is the responsibility "of Food Service within each institution" but the food is to be "prepared and served according to the therapeutic diet menus as written by [Bureau of Health Care Services] Registered Dieticians." *Id.*, ¶¶ P, Q.

Here, Plaintiff's complaint alleges that on numerous occasions, he personally spoke to Defendants Lutjens, Feliciano, Wellman, Tasson, Dahl, McCarthy, and Huss about the issues with his diet and that they refused to do anything to assist. He also avers that they were aware that MBP "did not provide and/or was not equipped to provide special religious Buddhist 'strict vegan' diet[] meals." (ECF No. 1, PageID.8.) However, with respect to Defendant Wellman, Plaintiff asserts that she tried to accommodate his religious practices by providing him with vegan items from the regular menu. (*Id.*) Based upon the above policy directives, and the absence of any allegations in Plaintiff's complaint to the contrary, there are no facts alleged that support an inference that Defendants Lutjens, Feliciano, Wellman, Tasson, Dahl, McCarthy, and Huss played an active role in creating the religious diet, failing to offer it at MBP, having Plaintiff transferred to MBP, and

refusing to change Plaintiff's diet to a strict vegan diet to accommodate his Buddhist beliefs. Plaintiff's First Amendment free exercise claims against those Defendants will, therefore, be dismissed.

Similarly, there is nothing in the policy directives or Plaintiff's factual allegations that support the inference that Defendant Washington played any role in creating the religious diet and not offering it at MBP, or that she played any role in the failure to switch Plaintiff to an alternative religious diet and having him transferred to MBP. Plaintiff, therefore, has failed to allege that Defendant Washington participated in active unconstitutional behavior regarding his claimed First Amendment free exercise violation.

Plaintiff contends that Defendant Heinritz had him transferred to MBP a second time despite knowledge that MBP could not accommodate his religious diet. (ECF No. 1, PageID.8.) Plaintiff alleges that prior to transfer, all inmates are to be screened to ensure that their special accommodations can be met at the new facility. (*Id.*, PageID.13.) MDOC Policy Directive 05.01.140 provides that a transfer order must include "the purpose of transfer, program information, [Special Problem Offender Notice] information, Security Threat Group (STG) designation, assaultive and property risk designations, current security screening designations, special handling (e.g., medical accommodations), and any pertinent information regarding special precautions which are to be taken with that prisoner." MDOC Policy Directive 05.01.140 ¶ H (eff. Nov. 1, 2017). Based upon that policy directive, and given Plaintiff's allegations, Plaintiff has plausibly alleged that Defendant Heinritz violated his First Amendment free exercise rights by transferring him to MBP despite knowing that MBP could not accommodate his religious diet.

Plaintiff sues Defendant Heinritz in her personal and official capacities. (ECF No. 1, PageID.3.) As noted above, he seeks damages as well as declaratory and injunctive relief. A suit

against an individual in his or her official capacity is equivalent to a suit brought against the governmental entity: in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). An official-capacity defendant is absolutely immune from monetary damages. *Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998); *Wells v. Brown*, 891 F.2d 591, 592-93 (6th Cir. 1989). The Court, therefore, will dismiss Plaintiff's suit for monetary relief against Defendant Heinritz in her official capacity.

Moreover, an official capacity action seeking injunctive relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). "Under the *Ex Parte Young* exception, a federal court can issue prospective injunctive and declaratory relief compelling a state official to comply with federal law[.]" *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008) (citing *Will*, 491 U.S. at 71 & n.10). Plaintiff seeks injunctive relief in the form of an order enjoining his transfer to any facility that does not provide special religious diets. (ECF No. 1, PageID.13.) Defendant Heinritz is the MDOC's Correctional Facilities Administration Transfer Coordinator and, therefore, would have direct involvement in any future transfers of Plaintiff to other MDOC facilities. Plaintiff, therefore, may maintain his First Amendment free exercise claim for declaratory and injunctive relief against Defendant Heinritz in her official capacity.

### b.      RLUIPA Defendants

RLUIPA does not create a cause of action against an individual in that individual's personal capacity. *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 331 (5th Cir. 2009), *aff'd Sossamon*

19

*v. Texas*, 563 U.S. 277 (2011)[5]; *see also Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012)
("[RLUIPA] does not create a cause of action against state employees in their personal capacity.");
*Washington v. Gonyea*, 731 F.3d 143, 145 (2d Cir. 2013) ("RLUIPA does not provide a cause of
action against state officials in their individual capacities . . . .").[6] Plaintiff names Defendants
Lutjens, Feliciano, Wellman, Tasson, Dahl, McCarthy, and Huss in their personal capacities only.
(ECF No. 1, PageID.2–4.) Plaintiff's RLUIPA claims against those Defendants will, therefore, be
dismissed. Plaintiff's RLUIPA claims against Defendant Heinritz in her personal capacity will also
be dismissed.

Moreover, RLUIPA does not permit damages claims against prison officials in their official
capacities either. A suit against an individual in his official capacity is equivalent to a suit brought
against the governmental entity. *See Will*, 491 U.S. at 71 (1989); *Matthews*, 35 F.3d at 1049. In
*Sossamon v. Texas*, 563 U.S. 277 (2011), the Supreme Court held that the RLUIPA did not
abrogate sovereign immunity under the Eleventh Amendment. *See also Cardinal v. Metrish*, 564
F.3d 794, 801 (6th Cir. 2009) ("[T]he Eleventh Amendment bars plaintiff's claim for monetary
relief under RLUIPA."). Therefore, although the statute permits the recovery of "appropriate relief
against a government," 42 U.S.C. § 2000cc-2(a), monetary damages are not available under

---

[5] The Supreme Court granted certiorari only on the question "Whether an individual may sue a
State or state official in his official capacity for damages for violation of" RLUIPA. *Sossamon v.
Texas*, 560 U.S. 923 (2010). Thus, the Supreme Court left undisturbed and unreviewed the Fifth
Circuit's holding that "RLUIPA does not create a cause of action against defendants in their
individual capacities." *Sossamon*, 560 F.3d at 331.

[6] In *Haight v. Thompson*, 763 F.3d 554 (6th Cir. 2014), the Sixth Circuit analyzed whether
Congress's spending power permitted a RLUIPA damages claim against an individual prison
official in the official's personal capacity. The court rested its determination that such claims were
not permitted on its conclusion that "appropriate relief" under RLUIPA was not a sufficiently clear
statement to authorize such a damages claim. *Id*. at 567-69. The court stopped short of adopting
the reasoning that swayed the Fifth Circuit in *Sossamon* and subsequent federal circuit court
panels. *Haight*, however, did not squarely present the issue whether a personal capacity suit for
injunctive or declaratory relief might be available.

RLUIPA. Plaintiff's claims for damages against Defendants Washington and Heinritz in their official capacities will, therefore, be dismissed.

Sovereign immunity, however, does not bar a suit seeking declaratory or injunctive relief against Defendants in their official capacities. *See Ex Parte Young*, 209 U.S. at 159–60. That exception, however, applies only to prospective relief. *Green v. Mansour*, 474 U.S. 64, 68–73 (1985). Plaintiff seeks declaratory or injunctive relief that is prospective. For the reasons discussed above, Plaintiff may maintain his claims for declaratory and injunctive relief under RLUIPA against Defendant Heinritz in her official capacity. Plaintiff, however, has not set forth allegations that Defendant Washington was personally involved in his transfer to MBP and the failure to provide him a religious diet. His RLUIPA claims against Defendant Washington will, therefore, be dismissed.

### 3.    Eighth Amendment Claims

Plaintiff next avers that Defendants Huss, Dahl, Wellman, McCarthy, Lutjens, and Feliciano violated his Eighth Amendment rights by refusing him his religious diet, causing him to be unable to adequately eat. (ECF No. 1, PageID.12.) He also suggests that Defendants Washington and Heinritz violated his Eighth Amendment rights by placing him at MBP, where he was unable to eat because he could not receive his religious diet. (*Id.*)

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148

F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial

risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

"[I]t is clearly established that the prison must provide adequate nutrition to prisoners," and that a failure to do so is an Eighth Amendment violation. *See Welch v. Spaulding*, 627 F. App'x 479, 484 (6th Cir. 2015). Here, Plaintiff contends that during his incarceration at MBP, he "had to live off a piece of [fruit,] a cup of breakfast juice, and 4 oz cups of peanut butter that he received from other inmates." (ECF No. 1, PageID.12.) Plaintiff also alleges that his inability to adequately eat caused him to experience hunger pains, difficulty sleeping, and side-effects from being unable to take his antidepressant with food. (*Id.*)

Plaintiff contends that Defendants Lutjens, Feliciano, and McCarthy told him that "he should do them and the State a favor and kill himself and save them all money, because if it was up to them they would allow Plaintiff to starve." (*Id.*, PageID.9.) The use of such language, although unprofessional, does not rise to constitutional dimensions. *See Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004); *Ivey v. Wilson*, 832 F.2d 950, 954–55 (6th Cir. 1987); *see also Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement, or attitude of a prison official with which we might disagree."). Nothing in the complaint, however, leads to the inference that Defendants Lutjens, Feliciano, and McCarthy failed to offer any sort of meal to Plaintiff. Given the lack of such allegations, Plaintiff has failed to set forth a plausible Eighth Amendment claim against Defendants Lutjens, Feliciano, and McCarthy.

With regard to Defendants Dahl, Tasson, and Huss, Plaintiff alleges that they told him "directly that the only way [he] was going to eat is to break his religious tenets and eat off the

regular meal lines." (ECF No. 1, PageID.9.) Again, however, nothing in the complaint leads to the inference that these Defendants refused to offer any sort of meal to Plaintiff. Likewise, nothing in the complaint leads to an inference that Defendant Washington actively refused to offer any sort of meal to Plaintiff. Given the lack of such allegations, Plaintiff has failed to set forth a plausible Eighth Amendment claim against Defendants Dahl, Tasson, Huss, and Washington.

With regard to Defendant Wellman, Plaintiff alleges that from July 10, 2020, through July 24, 2020, she attempted to accommodate his religious needs by providing him vegan items from the regular menu. (ECF No. 1, PageID.8.) When Plaintiff was transferred back to MBP on September 14, 2020, Defendant Wellman told Plaintiff that she "has no authority to modify or change his religious diet." (*Id.*) As discussed *supra*, Defendant Wellman had no authority to do so. However, as a dietician at MBP, Defendant Wellman would have responsibility for ensuring that Plaintiff received adequate calories and nutrition. Plaintiff's complaint infers that Defendant Wellman knew that Plaintiff was not receiving adequate nutrition and failed to correct such. Plaintiff, therefore, has set forth a plausible Eighth Amendment claim against Defendant Wellman at this time.

As to Defendant Heinritz, Plaintiff alleges that she transferred him back to MBP on September 14, 2020, despite knowing that his religious diet could not be accommodated at that facility. (ECF No. 1, PageID.8.) As discussed *supra*, MDOC Policy Directive provides that prior to transferring an inmate, it must be determined that the transferee facility can accommodate that inmate's needs, including programming, etc. MDOC Policy Directive 05.01.140 ¶ H. Plaintiff's complaint allows an inference that, as transfer coordinator for the MDOC, Defendant Heinritz knew that Plaintiff would not be able to adequately eat at MBP unless he violated his religious diet

tenets and transferred him anyway despite that knowledge. Plaintiff, therefore, has set forth a plausible Eighth Amendment claim against Defendant Heinritz at this time.

### 4.    First Amendment Retaliation Claims

Plaintiff contends that Defendants Heinritz, Huss, Tasson, Dahl, McCarthy, Lutjens, and Feliciano retaliated against him for filing grievances by burdening his religious exercise by not providing a Buddhist "strict vegan" diet while he was incarcerated at MBP. (ECF No. 1, PageID.12.) Specifically, Plaintiff suggests that Defendants Huss, Tasson, Dahl, McCarthy, Lutjens, and Feliciano retaliated by telling him that they would help him get his religious diet only if he "signed off his pending grievances against them." (*Id.*, PageID.9.) He suggests further that Defendant Heinritz retaliated against him by transferring him back to MBP.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a nonfrivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subject to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Plaintiff, therefore, has adequately alleged protected conduct: he states that he filed numerous grievances concerning the denial of his religious diet and lack of adequate food.

25

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening) (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)).

Here, Plaintiff contends that Defendant Heinritz transferred him to MBP a second time despite knowing that the facility could not accommodate his religious diet. In general, a transfer from one prison facility to another is not considered adverse. *See LaFountain v. Harry*, 716 F.3d 944, 948 (6th Cir. 2013) (citing *Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003)). "Since prisoners are expected to endure more than the average citizen, and since transfers are common

26

among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct." *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005). In any event, Plaintiff's complaint is devoid of facts from which the Court could infer that Defendant Heinritz was personally aware of any grievances filed by Plaintiff prior to his second transfer to MBP. Plaintiff's conclusory and speculative allegations, therefore, fail to state a plausible First Amendment retaliation claim against Defendant Heinritz.

Plaintiff also contends that Defendants Huss, Tasson, Dahl, McCarthy, Lutjens, and Feliciano retaliated against him by telling him that they would not help him get his religious diet unless he "signed off his pending grievance against them." (ECF No. 1, PageID.9.) This Court has recognized that similar "settlement offers" do not constitute adverse action. *See Reese v. West*, No. 1:21-cv-492, 2022 WL 325403, at * (W.D. Mich. Feb. 3, 2022) (dismissing inmate's First Amendment retaliation claim based upon allegations that the defendant officer threatened to ensure that he did not receive his property back if he refused to sign off on his grievance). Moreover, many courts, including this one, have concluded that the denial or refusal to process a grievance is not adverse action. *See, e.g.*, *Cameron v. Gurnoe*, No. 2:19-cv-71, 2019 WL 2281333, at *4–5 (W.D. Mich. May 29, 2019) (citing cases); *Branch v. Houtz*, No. 1:16-cv-77, 2016 WL 737779, at *6 (W.D. Mich. Feb. 26, 2016); *Ross v. Westchester Cnty. Jail*, No. 10 Civ. 3937(DLC), 2012 WL 86467, at *8 (S.D.N.Y. Jan. 11, 2012) (the refusal to file a grievance is, without more, insufficient to constitute an adverse action); *Stone v. Curtin*, No. 1:11-cv-820, 2011 WL 3879505, at *4 (W.D. Mich. Aug. 31, 2011) (the failure to process a prison grievance would not deter a prisoner of ordinary firmness from exercising his right to file a grievance); *Green v. Caruso*, No. 1:10-cv-958, 2011 WL 1113392, at *10 (W.D. Mich. Mar. 24, 2011) (the denial of a prisoner's grievances was not sufficiently adverse to support a retaliation claim); *Burgos v. Canino*, 641 F. Supp. 2d 443,

454 (E.D. Pa. 2009), *aff'd*, 358 F. App'x 302 (3d Cir. 2009) (the rejection or denial of prison grievances does not constitute an adverse action for purposes of a retaliation claim).

As set forth above, however, MDOC policy dictates that alternative religious diets are "developed and provided only with approval of the Deputy Director and only if it is determined that the Vegan menu does not meet the religious dietary needs of the prisoner." MDOC Policy Directive 05.03.150 ¶ OO. Presumably, Plaintiff himself could not have contacted the Deputy Director directly and requested an alternative diet; he would have needed assistance in doing so from the administration at MBP. Moreover, by refusing to sign off on his grievances against Defendants Huss, Tasson, Dahl, McCarthy, Lutjens, and Feliciano, Plaintiff continued to receive inadequate nutrition while at MBP because he chose not to forego his religious tenets. Essentially, Defendants' offer of help meant Plaintiff had to choose between adequate meals and foregoing his First Amendment right of redress. For purposes of this action, the Court concludes that this Hobson's choice constitutes sufficient adverse action, as it is plausible that a person of ordinary firmness would choose adequate nutrition and forego his or her right of redress.

Finally, temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). Plaintiff suggests that Defendants Huss, Tasson, Dahl, McCarthy, Lutjens, and Feliciano refused to assist him in obtaining his religious diet because of his grievances throughout his incarceration at MBP. Plaintiff, therefore, has set forth plausible First Amendment retaliation claims against Defendants Huss, Tasson, Dahl, McCarthy, Lutjens, and Feliciano at this time.

<u>Conclusion</u>

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Scott, Carlson, Smoyer, Unknown Parties, and Washington will be

dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against the remaining Defendants: (1) Plaintiff's claim pursuant to 42 U.S.C. § 1985; (2) Plaintiff's claim pursuant to 42 U.S.C. § 1986; (3) Plaintiff's First Amendment and RLUIPA claims against Defendants Lutjens, Feliciano, Wellman, Tasson, Dahl, McCarthy, and Huss; (4) Plaintiff's Eighth Amendment claims against Defendants Lutjens, Feliciano, Tasson, Dahl, McCarthy, and Huss; and (5) Plaintiff's First Amendment retaliation claim against Defendant Heinritz.

The following claims remain in the case: (1) Plaintiff's First Amendment free exercise claims against Defendant Heinritz in her personal and official capacities; (2) Plaintiff's RLUIPA claims for declaratory and injunctive relief against Defendant Heinritz in her official capacity; (3) Plaintiff's Eighth Amendment claims against Defendants Wellman and Heinritz; and (4) Plaintiff's First Amendment retaliation claims against Defendants Lutjens, Feliciano, Tasson, Dahl, McCarthy, and Huss.

An order consistent with this opinion will be entered.

Dated:     May 10, 2022                                    /s/ *Maarten Vermaat*
                                                          Maarten Vermaat
                                                          United States Magistrate Judge